UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

In re: AMELIA ISLAND COMPANY

---

AD HOC COMMITTEE OF CURRENT AND
RESIGNED MEMBERS OF THE AMELIA ISLAND
CLUB,

    Appellant,

v.                                        Case No. 3:10-cv-1197-J-12
                                        Case No. 3:09-bk-09601-PMG

AMELIA ISLAND COMPANY and
PRIAC REALTY INVESTMENTS LLC,

    Appellees.

---

## ORDER

This cause is before the Court on Appellee PRIAC Realty Investments, LLC's ("PRIAC") "Motion to Dismiss Appeal ..." (Doc. 1)[1] ("Motion to Dismiss"), filed on December 30, 2010. Appellant Ad Hoc Committee of Current and Resigned Members of the Amelia Island Club ("Committee") filed a response in opposition (Doc. 11) on January 10, 2011. Debtor/Appellee Amelia Island Company joins PRIAC's Motion to Dismiss. See Doc. 15. On February 9, 2011, the Court conducted a hearing on the Motion to Dismiss. For the reasons set forth below, the Court will deny the Motion to Dismiss and allow Appellant to substitute a Committee member(s) (individually and/or in a representative capacity) as the real party or parties in interest, so that this appeal may proceed on the merits.

---

[1] Throughout this Order, the Court will cite to the documents in this Court's record as "Doc. x" and to the documents in the record on appeal from the Bankruptcy Court as "Bankr. Doc. x."

## Background

The merits of this appeal are not before the Court for consideration at this time, however a review of the proceedings and rulings in the Bankruptcy Court is necessary in order to resolve the standing/real party in interest issue before the Court on the Motion to Dismiss. This appeal arises from the Chapter 11 reorganization proceedings of the Debtor/Appellee Amelia Island Company, which owned and operated the Amelia Island Club ("Club"), and the confirmation of its First Amended Chapter 11 Plan of Reorganization ("Plan") which established a new member-owned Club. The Committee purportedly consists of certain current and former members of the Club, who claim the right to full refund of their membership deposits pursuant to several Club governing documents in effect before Plan confirmation. Doc. 11 at 1-2.

Specifically, the Committee asserts that pursuant to the Non-Disturbance Agreement and Independent Covenant ("NDA"), PRIAC, as a lender to the Debtor/Appellee, was contractually obligated to make its right to repayment subordinate to Committee members' rights to full membership deposit refunds, and that PRIAC breached the NDA by supporting the Debtor/Appellee's Plan which ultimately diminished those triggered or vested deposit refund rights. Id. at 2. The Committee seeks review of the Bankruptcy Court's denial of its Motion for Reconsideration of the Order Confirming the Debtor's First Amended Plan of Reorganization ("Motion for Reconsideration"), whereby it challenged several provisions of the Plan that it maintained were unnecessary and negatively impacted its ability to pursue damage claims for breach of contract (the NDA), against PRIAC in an Adversary Proceeding. Id.

In its Motion for Reconsideration (Bankr. Doc. 865), the Committee sought to

remove from the Bankruptcy Court's "Findings of Fact, Conclusions of Law, and Order ... Confirming First Amended Chapter 11 Plan of Reorganization for Amelia Island Company" (Bankr. Doc. 815)("Confirmation Order") the statement that "[n]one of the triggering events that would entitle Current Members or Resigned Members to any refund of their Membership Deposits have occurred" (Bankr. Doc, 815 at 21 ¶ 4), and to add a statement to two provisions of the Confirmation Order to state explicitly that nothing in it was intended to preclude the Committee from pursuing its damage claims against PRIAC for breach of the NDA in the Adversary Proceeding.  Bankr. Doc. 865 at 11-14.

The Committee had initiated an Adversary Proceeding against PRIAC when the Bankruptcy Court held a hearing on confirmation, motions and objections ("Conformation Hearing") on August 26, 2010.  Prior to the October 6, 2010, hearing on PRIAC's motion to dismiss the Complaint in the Adversary Proceeding for lack of standing, the Committee filed its First Amended Complaint substituting Committee member William Brandt, on his own behalf and on behalf of all others similarly situated, ("Brandt") as the Plaintiff.  After the Bankruptcy Court's November 2, 2010, denial of its Motion for Reconsideration, the Committee voluntarily dismissed the Adversary Proceeding and filed this appeal.

## Standing

A review of the Bankruptcy Court docket reveals that an entity designating itself as the Committee participated throughout the Debtor/Appellee's Chapter 11 bankruptcy proceedings, including filing objections to the Plan and arguing them at the Confirmation Hearing, seeking reconsideration of portions of the Confirmation Order, and initiating an Adversary Proceeding against PRIAC.  The Bankruptcy Court record also reveals that the

3

issue of which Club members comprised the Committee and whether it had standing or was the real party in interest was raised several times, including at the Confirmation Hearing (Bankr. Doc. at 55, 135-37, 147, 164-65, 171, 186, 189, 197-99, 212, and 220-21), with regard to the Committee's Motion for Reconsideration in PRIAC's memorandum (Bankr. Doc. 941 at 1, 5-6) and during the hearing argument (Bankr. Doc. 966 at 6-7, 20), and in PRIAC's motion to dismiss the Committee's original Adversary Proceeding Complaint. PRIAC's motion to dismiss the Adversary Proceeding ultimately was mooted by the filing of a First Amended Complaint naming Brandt as the putative class representative for those Club members seeking damages from PRIAC for loss of the right to their full membership deposit refunds due to its alleged breach of the NDA (Bankr. Doc. 1033 at 8).

Despite the fact that the issue of the Committee's standing to participate in the various bankruptcy proceedings was raised several times, the Bankruptcy Court never expressly ruled on that issue. This appears to be because, at least as of the time of the Confirmation Hearing, the Bankruptcy Court, Appellees and Appellant all were proceeding on the basis that the issues the Committee wanted to raise with PRIAC regarding the NDA would be addressed in the Adversary Proceeding. As noted at the October 6, 2010, hearing on PRIAC's motion to dismiss the Committee's original Complaint in the Adversary Proceeding, the Committee had filed a First Amended Complaint in the Adversary Proceeding substituting Brandt, on his own behalf and on behalf of all others similarly situated, which counsel for the Committee observed "took care of the things that [PRIAC was] complaining about." Bankr. Doc. 1033 at 6-8.

The Committee did not formally ask to substitute Brandt as a party in any of the

underlying bankruptcy case proceedings, nor did the Bankruptcy Court expressly substitute Brandt. Nevertheless, a review of the proceedings in the bankruptcy case reveals that counsel for the Committee routinely claimed to represent Brandt as a putative class representative or representative of a group, and Brandt was treated as though he comprised or represented the Committee, particularly after he was substituted as Plaintiff in the Adversary Proceeding.

At the Confirmation Hearing on August 26, 2010, counsel for the Committee stated that he represented the Committee, "also sometimes referred to as the Brandt Group" or "the Brandt initiative." Bankr. Doc. 908 at 7 and 138. In fact, at that hearing, counsel for PRIAC stated: "I accept the fact that Mr. and Mrs. Brandt and Mr. Crowley, who at least is in the courtroom and has been before, are making the objection [to the Plan]." Bankr. Doc. 908 at 189.

At the October 6, 2010, hearing on PRIAC's Motion to Dismiss the original Complaint in the Adversary Proceeding, the Committee's counsel addressed the Court saying "[t]he last time you saw me I represented the Ad Hoc Committee. Today, I'm really here representing Mr. Brandt and the [putative] class." Bankr. Doc. 1033 at 4. On October 20, 2010, at the hearing on the Committee's Motion for Reconsideration, the following exchange took place between counsel for the Committee and the Bankruptcy Court:

> Mr. Taylor: I'm Greg Taylor of Diamond McCarthy. I represent Mr. Brandt and the [putative] class in the adversary proceeding. And in the main case, since those people now encompass The Ad Hoc Committee, I guess I represent The Ad Hoc Committee. But I'm really here on behalf of Mr. Brandt and the [putative] class, which covers all those people.
>
> The Court: Very good.

Doc. 966 at 4. At that same hearing, in explaining that the Committee was seeking

5

reconsideration of and changes to the Confirmation Order to prevent any prejudice in the Adversary Proceeding against PRIAC, counsel for the Committee stated:

> So we would ask that you make the changes that we have outlined. And, you know, at one point we might have mentioned The Ad Hoc Committee, and perhaps you should just say the plaintiffs in the adversary proceeding to make it clear that it's Brandt plus the class, which will include those people, because there wasn't a class at the time this was done.

Doc. 966 at 20. Counsel for the Committee also informed the Bankruptcy Court of its agreement with PRIAC regarding how to proceed with the Adversary Proceeding "where the only people who are actually interested in the issue are both present," that is Brandt, as representative of a putative class, and PRIAC. Bankr. Doc. 966 at 6.

When the Bankruptcy Court issued its oral ruling on the Committee's Motion for Reconsideration on November 2, 2010, counsel for the Committee again stated his appearance on behalf of "William Brandt and the [putative] class." Bankr. Doc. 1030 at 4. The bankruptcy record before the Court thus reveals that as of the time of the Confirmation Hearing, PRIAC and the Bankruptcy Court acknowledged that Brandt was an appropriate Committee member to pursue the Committee's objections to the Plan, which were related to the issues regarding membership deposit refund rights he sought to assert on behalf of himself and other Committee members in the Adversary Proceeding.

As an initial matter, the Court is unconvinced by Appellees' argument that cases discussing what constitutes a committee for purposes of Bankr. R. 2019 are relevant to the determination of whether the Committee has standing to pursue this appeal. Rule 2019 requires that members of every committee representing more than one creditor or equity security holder must make certain financial and other disclosures in order to participate in the bankruptcy proceedings. It does not otherwise address or attempt to limit the types of

entities that may participate.

The cases cited by both Appellees and the Committee, discussing the definition of a committee for purposes of Rule 2019, whether broadly or narrowly defining it, all acknowledge that informal ad hoc committees comprised of individuals with similar interests routinely participate in bankruptcy proceedings.  See, In re: Philadelphia Newspapers, LLC, 422 B.R. 553 (Bankr. E.D. Pa. 2010); In re: Premier International Holdings, 423 B.R. 58 (Bankr. D.Del. 2010); In re: Washington Mutual, Inc., 419 B.R. 271 (Bankr. D. Del. 2009); In re: Northwest Airlines Corp., 363 Bankr. 701 (Bankr. S.D.N.Y. 2007).  In fact, these cases concerning Rule 2019 note that an amendment to the Bankruptcy Rules has been proposed that would require informal ad hoc committees to comply with its disclosure requirements, further supporting the conclusion that simply because an entity participating in bankruptcy proceedings is an ad hoc committee does not automatically deprive it of standing or status as a real party in interest in the Bankruptcy Court or on appeal.

The crux of the standing issue in this case with regard to the Committee has been which individual Club members comprised it. The bankruptcy record cited herein reveals that there was no question in the bankruptcy proceedings that some individual Club members were appropriate parties to raise the issues the Committee sought to raise, but PRIAC asserted that some of the listed members of the Committee were inappropriate parties.

PRIAC also urges the Court to apply the doctrine of judicial estoppel to dismiss this appeal because the Committee took the position in the Adversary Proceeding by substituting Brandt as Plaintiff, in response to PRIAC's motion to dismiss, that it is not the

real party in interest. Judicial estoppel is an equitable doctrine invoked by a court at its discretion to protect the integrity of the judicial process and to prevent a party from taking inconsistent legal positions to the prejudice of the opposing party. New Hampshire v. Maine, 532 U.S. 742, 749-50 (2001); Allapattah v. Exxon Corp., 372 F.Supp.2d 1344, 1367-68 (S.D.Fla. 2005).

The Court looks primarily at three factors in determining whether to apply the doctrine of judicial estoppel: 1) whether the party's later position is clearly inconsistent with its earlier position; 2) whether the party succeeded in persuading a court to accept its earlier position so that the acceptance of an inconsistent position in a later proceeding would create the perception that the court has been misled; and 3) whether the party seeking to assert the inconsistent position would gain an unfair advantage or impose an unfair detriment on the opposing party if not estopped. Id. at 750-51. These factors are not exhaustive and the Court looks at the specific factual context to determine whether the doctrine should be applied. Id. at 751.

For purposes of applying the doctrine of judicial estoppel, an adversary proceeding is a subpart of a single bankruptcy case; it is a contested matter that is addressed before the underlying bankruptcy case is closed. See, e.g., Gosman v. Peabody & Arnold LLP, 382 B.R. 826, 841-43 (S.D. Fla. 2007)(judicial estoppel applied to make judicial admissions in one adversary proceeding binding in another adversary proceeding in the same bankruptcy case).

The Court agrees with PRIAC that applying the three factors set for the above, and recognizing that the Adversary Proceeding was a subpart of the Debtor/Appellee's bankruptcy case, the Committee should be estopped from taking the position that Brandt

8

and others similarly situated are not the real parties in interest. As discussed above, the bankruptcy record reveals that questions regarding Committee membership had been raised in the proceedings and that there was no dispute that Brandt was an appropriate Committee member to pursue the pending issues involving PRIAC, the NDA, and members' deposit refund rights.

However, the Court is of the opinion that applying judicial estoppel does not merit dismissal of this appeal because Brandt and/or other Committee members may be substituted as the real party in interest. Federal Rule of Civil Procedure 17(a)(3) states that:

> [t]he Court may not dismiss an action for failure to prosecute in the name of the real party in interest until, after objection, a reasonable time has been allowed for the real party in interest to ratify, join, or be substituted into the action. After ratification, joinder, or substitution, the action proceeds as if it had been originally commenced by the real party in interest.

It is not contested that Brandt was a member of the Committee and is a real party in interest with regard to the issues sought to be addressed on this appeal from the underlying bankruptcy case, which also were related to those sought to be addressed in the Adversary Proceeding. Once Brandt was substituted as the Plaintiff in the First Amended Complaint in the Adversary Proceeding, counsel for the Committee identified himself as representing Brandt, and even counsel for PRIAC acknowledged at the Confirmation Hearing before that substitution that Brandt was an appropriate individual to make objections to the Plan as a member of the Committee. The Bankruptcy Court in effect proceeded as though Brandt had been substituted for or represented the Committee since there was no dispute that Brandt was a real party in interest who had participated in

the bankruptcy proceedings as well as in the Adversary Proceeding which was part of the single bankruptcy case concerning the Debtor/Appellee. As a result, the Court is of the opinion that Appellant should be permitted to substitute a Committee member(s) as a real party in interest on appeal.

The Court also finds that it will not serve the interests of justice to dismiss this appeal, and require Brandt or another Committee member(s) to pursue an Adversary Proceeding, then possibly be required to take an appeal from that proceeding, when a key, potentially dispositive issue to be addressed in an Adversary proceeding has already been determined in the Plan and by the Bankruptcy Court's ruling on the Motion for Reconsideration and is presented in this appeal. The issue of whether any triggering events had occurred which would have entitled some Club members to a full membership deposit refund was clearly an important issue in the underlying bankruptcy case and was addressed at the Confirmation Hearing based on the Committee's Plan objections, as well as on the Committee's Motion for Reconsideration, and also was an important issue governing the dispute between the Committee and PRIAC in the Adversary Proceeding. The Bankruptcy Court found in its Confirmation Order (Bankr. Doc. 815 at 21 ¶ 4) that "[n]one of the triggering events that would entitle Current Members or Resigned Members to any refund of their Membership Deposits have occurred" and in ruling on the Motion for Reconsideration that such finding was not clear error and did not result in manifest injustice (Bankr. Doc. 1030 at 12).

The Committee's position on the Motion for Reconsideration was that such finding (that no triggering event had occurred regarding deposit refunds) was an effective bar to resolving that necessary issue in the Adversary Proceeding. Bankr. Doc. 966 at 8. PRIAC

took the position that nothing in the Confirmation Order precluded certain individual Committee members' ability as real parties in interest to bring claims against it arising out of the NDA in an Adversary Proceeding, but it also maintained that "the practical result of the consummation of the Amended Plan and the creation of the New Equity Club, and the fact that 'triggering events' did not occur, is that *no claims exist to be asserted in [the Adversary Proceeding* (emphasis added)]" Bankr. Docs. 966 at 27; 941 at 5 and 6; 1030 at 12. For that reason, PRIAC and Brandt had agreed to proceed to summary judgment on the legal issues in the Adversary Proceeding before addressing any class certification issues.

## Conclusion

The issues the Committee seeks to address in this appeal are significant if not dispositive of the issues intended to be addressed in any Adversary Proceeding, and an acknowledged real party in interest had been substituted in the Adversary Proceeding which was part of Debtor/Appellee's single bankruptcy case. For the foregoing reasons, the Court will deny PRIAC's Motion to Dismiss, allow Appellant time to substitute an appropriate Committee member(s) (individually and/or in a representative capacity) as the real party in intererst, and permit this appeal to proceed on the merits in the interests of justice and judicial economy.

Upon review of the matter, it is

**ORDERED AND ADJUDGED**:

1. That Appellee PRIAC Realty Investments, LLC's "Motion to Dismiss Appeal ..." (Doc. 1) is denied;

2. That Appellant shall have fourteen (14) days from the date of this Order to

substitute an appropriate Committee member(s) (individually and/or in a representative capacity) as a party or parties in lieu of the Ad Hoc Committee of Current and Resigned Members of the Amelia Island Club; and

3. That Appellants shall have fourteen (14) days from the date of substitution to file any objections, if any, to the Committee member(s) designated.

**DONE AND ORDERED** this 6TH day of April 2011.

*Howell W. Melton*
**SENIOR UNITED STATES DISTRICT JUDGE**

c:   Counsel of Record